NUMBER 13-99-269-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI


___________________________________________________________________


PEDRO MORENO
, Appellant,


v.



THE STATE OF TEXAS
, Appellee.

___________________________________________________________________


On appeal from the 214th District Court


of Nueces County, Texas.


___________________________________________________________________


O P I N I O N



Before Chief Justice Seerden and Justices Dorsey and Yañez


Opinion by Chief Justice Seerden



 Appellant Pedro Moreno was convicted of indecency with a child. A jury
sentenced him to twelve years of imprisonment and a fine of $3,000. On appeal,
Moreno challenges the legal sufficiency of the evidence to support the jury's finding. 
We affirm.

Record on Appeal


 Appellant did not request that any of the trial exhibits be made a part of the
record on appeal. In a criminal case, if the statement contains a point complaining that
the evidence is insufficient to support a finding of guilt, the record must contain all the
evidence admitted at the trial on the issue of guilt, or innocence and punishment. Tex.
R. App. P. 34.6(c)(5). If anything relevant is omitted from the reporter's record, the
trial court, the appellate court, or any party may by letter direct the court reporter to
prepare, certify, and file in the appellate court a supplemental reporter's record
containing the omitted items. Id. Thus, this Court could request that the missing
exhibits be made part of the record on appeal. However, because we conclude that
the record already before this Court contains sufficient evidence to affirm Moreno's
conviction, we will proceed to address the merits of this appeal in the interests of
judicial economy.

Standard of Review


 A legal sufficiency review calls upon the reviewing court to view the relevant
evidence in the light most favorable to the verdict and determine whether any rational
trier of fact could have found the essential elements of the crime beyond a reasonable
doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560
(1979); Johnson v. State, No. 1915-98, 2000 WL 140257 (Tex. Crim. App. Feb. 9,
2000)(opinion not yet released for publication, thus subject to revision or withdrawal);
Weightman v. State, 975 S.W.2d 621, 624 (Tex. Crim. App. 1998). 

 In a legal sufficiency review, the jury remains the exclusive judge of the
credibility of the witnesses and of the weight to be given their testimony. Barnes v.
State, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994). The appellate court serves to
ensure the rationality of the fact finder, but does not disregard, realign, or weigh the
evidence. Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). The jury
is entitled to draw reasonable inferences from the evidence. Benavides v. State, 763
S.W.2d 587, 588-89 (Tex. App.--Corpus Christi 1988, pet. ref'd). The jury may use
common sense and apply common knowledge, observation, and experience gained in
the ordinary affairs of life when giving effect to the inferences that may reasonably be
drawn from the evidence. Griffith v. State, 976 S.W.2d 686, 690 (Tex. App.--Tyler
1997, pet. ref'd). 

 The evidence is measured by the elements of the offense as defined by a
hypothetically correct jury charge. Malik v. State, 953 S.W.2d 234, 238-40 (Tex.
Crim. App. 1997). The critical inquiry is whether any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt. See McDuff v.
State, 939 S.W.2d 607, 614 (Tex. Crim. App.), cert. denied, 522 U.S. 844, 118 S.Ct.
125, 139 L.Ed.2d 75 (1997).

Indecency with a Child


 Under the applicable provisions of the Texas Penal Code, a person commits
indecency with a child if he engages in sexual contact with a child who is younger
than seventeen and not his spouse. Tex. Penal Code Ann. §21.11(a)(1) (Vernon 1994
and Supp. 2000). "Sexual contact" is defined as any touching of the anus, breast, or
any part of the genitals of another person with the intent to arouse or gratify the
sexual desire of any person. Id. at §21.01(2) (Vernon 1994). Thus, the State had to
present evidence sufficient to show that Moreno touched the child's anus, breast, or
genitals with intent to arouse or gratify sexual desire.

Facts 


 G.Z. ("the child") was a ten year old student at Tuloso-Midway Intermediate
School, and Pedro Moreno was her art teacher. At the time of the incident at issue, 
Moreno and the students in the class had been cleaning out a storage room adjacent
to the classroom. 

 G.Z. testified that Moreno asked her to help him put balloons on the shelves in
the storage room. Moreno instructed her to stand on a table in the storage room,
which she did, and Moreno handed her the balloons to place on the shelves. Moreno
selected G.Z. to assist in this matter despite the fact that Moreno was tall enough to
shelve the balloons without assistance, and G.Z. was not the tallest child in the class. 
Until this point in time, there were other students coming in and out of the storage
room. 

 When Moreno and G.Z. were alone, Moreno closed the door to the storage
room, stating that he wanted to see if the balloons would fall off the shelves due to
the ensuing draft, and left the door closed. Moreno then told the child to get down
from the table, and he physically helped her to the ground. G.Z. testified that she was
capable of descending the table by herself, and further testified that she did not lose
her balance in descending from the table. When G.Z. was standing on the floor,
Moreno approached her from behind, put his hand between her legs, and rubbed her
genitals through her clothing. G.Z. estimated that Moreno's rubbing lasted for "about
a minute." Moreno stopped touching her when another student, H.A., opened the
door to the storage room. G.Z. and Moreno then left the storage room, and Moreno
gave G.Z. a gift, a frame with a rocking horse or bear on it. At lunch on the day of the
incident, the child told her friends that Moreno touched her, and reported the incident
to a teacher and a counselor. 

 H.A., a fellow student in the art class, testified that when she opened the door
to the storeroom, she saw G.Z. on the table, and saw Moreno touching her "down
below" with his hand between her legs. H.A. testified that Moreno yelled at her and
told her to go back to her seat. H.A. then testified that G.Z. left the closet "a couple
of minutes later," looking scared, and crying. 

 Another student, M.C., testified that Moreno and the child were alone in the
storage room with the door closed for approximately ten minutes.

 Elizabeth Frederick, a math and science teacher, testified that G.Z., H.A., and
another child approached her at recess that day and told her that Moreno had touched
G.Z. Frederick said that G.Z. did not seem emotional, but seemed shocked and
somewhat puzzled. Frederick testified that the children told her that "they" saw
Moreno touching G.Z. Frederick then took G.Z. to see Grace Chapa, the school
counselor.

 Chapa testified that G.Z. told her that Moreno touched her waist and genital
area in lifting her down from the table, then touched her genitals again when they
were both standing.

 Officer Phil Cunningham testified regarding the contents of Moreno's voluntary
statement made during his investigation of the incident, and read Moreno's statement
into the record. In his statement, Moreno said that G.Z. had finished her assignments,
and the other children were jealous of her. Therefore, despite "teasing" and
"favoritism," Moreno chose G.Z. to help him clean the storage closet. 

 Moreno said that the closet was too small for all the children to help clean it,
so he became verbally abusive in telling the other children to stay out of the closet. 
Moreno said that he immediately opened the closet door when a student closed it "to
avoid any teacher or any student from thinking bad or creating rumors." However,
Moreno said that he repeatedly opened and closed the door to see if the balloons
would fly off the shelves.

 After the balloons were secured, Moreno said that he was about to leave the
closet when he heard a "popping" sound, and assumed that G.Z. was falling off the
table. He thus turned and caught her about her waist, but almost dropped her,
catching her again immediately "down in her lower private area accidentally and not
intentionally." Moreno denied any further physical contact with G.Z. Moreno admitted
that he gave G.Z. a present, but said that he commonly gave the students presents
from the storeroom in order to both reward them and to minimize clutter. According
to Moreno's statement, his only crime was being verbally abusive, but he was not
sexually abusive.

 At trial, Moreno testified that any touching occurred when G.Z. fell off the table,
and he caught her. Moreno testified that the child "volunteered" to help him clean the
storage room, and he denied ever closing the door to the storage room. Moreno
admitted that he had given a prior statement in which he denied that he had ever
touched G.Z. Moreno explained that he later admitted to an "accidental" touching
because, "after all that confusion I had to say something." Moreno said that upon
reflection, he believed that he must have accidentally touched G.Z. or she would not
have so accused him.

 Analysis 


 Evidence supporting the conviction is found in the testimony of the child, an
eyewitness, and the conflicting testimony provided by Moreno himself. Nevertheless,
Moreno contends that the foregoing evidence was legally insufficient to show that he
touched the child's genitals with the required culpable mental state, i.e., with intent
to arouse or gratify sexual desire. However, the specific intent to arouse or gratify the
sexual desire of a person can be inferred from conduct, remarks, or all of the
surrounding circumstances. See McKenzie v. State, 617 S.W.2d 211, 216 (Tex. Crim.
App. 1981); Couchman v. State, 3 S.W.3d 155, 163 (Tex. App.--Fort Worth 1999,
pet ref'd); Santos v. State, 961 S.W.2d 304, 308 (Tex. App.--Houston [1st Dist.]
1997, pet. ref'd). Here, Moreno's intent can be inferred from the act of touching the
child, from his request to H.A. to shut the door, and from his conduct afterwards,
specifically his conflicting statements about the incident at issue. 

 In determining the legal sufficiency of the evidence to show Moreno's intent,
we must presume that the trier of fact resolved any conflict in testimony in favor of
the prosecution, and must defer to that resolution. Matson v. State, 819 S.W.2d 839,
846 (Tex. Crim. App. 1991). Moreover, the jury is the sole judge of the credibility of
the witnesses. Williams, 692 S.W.2d at 676. It was reasonable for the jury to
conclude that the child did not fall, and Moreno had touched her with the intent to
arouse or gratify sexual desires. 

Conclusion


 Viewing the evidence in the light most favorable to the jury's verdict, a rational
jury could have found the evidence was sufficient to prove that Moreno touched the
child with the intent to arouse or sexually gratify. We thus affirm the trial court's
judgment. 



 __________________________________

 ROBERT J. SEERDEN, Chief Justice


Do not publish
.

Tex. R. App. P. 47.3.


Opinion delivered and filed

this 25th day of May, 2000.